```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EMBASSY OF THE BLESSED KINGDOM      :      CIVIL ACTION
OF GOD FOR ALL NATIONS CHURCH,      :
et al.                              :
                                    :
             v.                     :
                                    :
ERIC HOLDER, et al.                 :      NO. 13-041
```

MEMORANDUM

Bartle, J.                                                        March 20, 2014

Plaintiffs Embassy of the Blessed Kingdom of God for All Nations Church ("Embassy Ukraine"), God's Embassy Church located in Philadelphia, Pennsylvania ("Embassy Philadelphia"), and Pastor Mykhaylyk Oleksandr ("Oleksandr") bring this action against United States Attorney General Eric Holder, Secretary of the United States Department of Homeland Security Rand Beers, Director of the United States Citizenship and Immigration Services ("USCIS") Alejandro Mayorkas, and USCIS District Director Evangelia Klapakis (together with all defendants, the "Government") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. The plaintiffs seek to set aside as arbitrary and capricious USCIS's decision denying a 2009 special immigrant petition filed for Oleksandr's benefit by his employer, God's Embassy Church located in Sacramento, California ("Embassy Sacramento").

Before us are the parties' cross-motions for summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure. The Government has additionally moved to dismiss Oleksandr as a plaintiff for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1]

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When, as here, the parties cross-move for summary judgment on an administrative record, they "essentially contend[] that no issue of material fact exists." Moros v. Conn. Gen. Life Ins. Co., Civil Action No. 12-5468, 2014 WL 323249, at *2 (E.D. Pa. Jan. 29, 2014). The propriety of an agency's decision is therefore "a question of law, and only a question of law." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Review is limited to the administrative record that existed before the agency at the time of the decision, which must be judged solely

---

[1] The plaintiffs' complaint contained an additional count seeking a writ of mandamus under 28 U.S.C. § 1361. This count was dismissed as unopposed on August 27, 2013. The plaintiffs also brought a count seeking relief under the Due Process Clause of the Fifth Amendment of the United States Constitution. We dismissed this count under Rule 12(b)(6) of the Federal Rules of Civil Procedure on August 28, 2013. Embassy of the Blessed Kingdom of God for All Nations Church v. Holder, Civil Action No. 13-041, 2013 WL 4551208 (E.D. Pa. Aug. 28, 2013).

on the grounds raised by the agency.  See <u>Dia v. Ashcroft</u>, 353 F.3d 228, 241 (3d Cir. 2003); <u>C.K. v. N.J. Dep't of Health & Human Servs.</u>, 92 F.3d 171, 172 (3d Cir. 1996).

II.

This lawsuit concerns USCIS's denial of a petition filed by Embassy Sacramento on September 3, 2009 to obtain special immigrant status for Oleksandr.  Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 <u>et</u> <u>seq</u>., up to 5,000 visas are available to "special immigrants" each year.  8 U.S.C. § 1153(b)(4).  One type of special immigrant eligible for such a visa is a religious worker.  <u>Id.</u> § 1101(a)(27)(C).  A religious worker is an individual who

> (i)   for at least 2 years immediately preceding the time of application for admission, has been a member of <u>a religious denomination having a bona fide nonprofit, religious organization in the United States</u>;
> (ii)  seeks to enter the United States—
>   (I)   solely for the purpose of carrying on the vocation of a minister of that religious denomination,
>   (II)  before September 30, 2015, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or
>   (III) before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) at the request of the organization in a religious vocation or occupation; and

>     (iii) has been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described in clause (i).

<u>Id.</u> (emphasis added).[2]  The United States Department of Homeland Security's interpretation of this provision hews closely to the statutory text, explaining in relevant part that

> To be eligible for classification as a special immigrant religious worker, the alien (either abroad or in the United States) must:
> (1) For at least the two years immediately preceding the filing of the petition have been a member of a religious denomination that has a bona fide non-profit religious organization in the United States.
> (2) Be coming to the United States to work in a full time (average of at least 35 hours per week) compensated position in one of the following occupations...:
>     (i)   Solely in the vocation of a minister of that religious denomination;
>     (ii)  A religious vocation either in a professional or nonprofessional capacity; or
>     (iii) A religious occupation either in a professional or nonprofessional capacity.
> (3) <u>Be coming to work for a bona fide non-profit religious organization in the United States, or a bona fide organization which is affiliated with the religious denomination in the United States.</u>

---

[2]  Regulations define "religious denomination" as "a religious group or community of believers that is governed or administered under a common type of ecclesiastical government" and that reflects one or more of a series of traits evidencing a commonly-held set of beliefs.  8 C.F.R. § 204.5(m)(5).  A "bona fide organization which is affiliated with the religious denomination" is "an organization which is closely associated with the religious denomination" that is exempt from taxation under 26 U.S.C. § 501(c)(3).  <u>Id.</u>

-4-

> (4) Have been working in one of the positions described in paragraph (m)(2) of this section, either abroad or in lawful immigration status in the United States, and after the age of 14 years continuously for at least the two-year period immediately preceding the filing of the petition.

8 C.F.R. § 204.5(m) (emphasis added).

To establish religious worker status, either the alien or his or her prospective United States employer must petition USCIS by filing Form I-360.  8 C.F.R. § 204.5(m)(6).  "An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication."  8 C.F.R. § 103.2(b)(1).  The burden of proving eligibility rests with the petitioner.  8 U.S.C. § 1361.

Oleksandr arrived in the United States in April 2008, holding a temporary visa obtained for him by Embassy Sacramento.  Oleksandr's function with this church was to establish and develop Embassy Philadelphia, which, similar to the California organization, was to serve as a representative extension of Embassy Ukraine in the United States.  Philadelphia, it turned out, was Oleksandr's place of employment throughout the relevant time period.  As noted above, on September 3, 2009, Embassy Sacramento filed a Form I-360 petition on his behalf, acting as an associated and affiliated branch of Embassy Ukraine.

After the petition was filed, USCIS undertook an investigation to determine whether Oleksandr was working for Embassy Sacramento as required under the statute and regulations.  <u>See</u> 8 U.S.C. § 1101(a)(27)(C); 8 C.F.R. § 204.5(m)(3).  USCIS conducted a site visit in Sacramento pursuant to this investigation.  The visit revealed that there were multiple businesses at the address provided by Embassy Sacramento, and the investigating officer tried and failed to reach either Oleksandr or Embassy Sacramento.  Unable to verify that Oleksandr worked for the church or the church's eligibility as a bona fide non-profit organization, USCIS sent a notice of intent to deny the I-360 petition to Embassy Sacramento on August 11, 2010.

After Embassy Sacramento responded to the notice of intent to deny, USCIS conducted a second site visit at Oleksandr's place of employment in Philadelphia on September 27, 2010.  There were once again no signs showing that the address listed was used as a church.  The investigating officer thereafter visited Oleksandr at his home, where Oleksandr explained that he had been running missionary training, drug and alcohol counseling, and youth programs in Philadelphia.

In addition, although Embassy Sacramento had originally provided documentation showing that it was exempt from taxation under 26 U.S.C. § 501(c)(3), the USCIS

investigator also discovered that Oleksandr had taken steps to obtain tax-exempt status for Embassy Philadelphia by establishing it as a subordinate of an organization called the International Congress of Churches and Ministers ("ICCM").[3] There is no evidence to suggest that the ICCM is affiliated with Embassy Sacramento or Embassy Ukraine. The ICCM had supplied Oleksandr with a letter approving Embassy Philadelphia as its subordinate and a copy of correspondence from the Internal Revenue Service to the ICCM confirming that the organization's subordinates would enjoy tax-exempt status. When asked why he took this action independently of Embassy Sacramento, Oleksandr explained that it was beneficial to establish tax-exempt status through more than one source.

On November 9, 2011, USCIS issued a second notice of intent to deny the I-360 petition. It cited the questionable circumstances surrounding Oleksandr's affiliation with the ICCM and the lack of information covering the relationship between Embassy Sacramento, the petitioning organization, and Embassy Philadelphia, where Oleksandr worked. In sum, USCIS had determined that there was insufficient evidence to demonstrate any bona fide affiliation between Embassy Sacramento and Embassy Philadelphia.

---

[3] ICCM charges a $650 fee to obtain subordinate status and requires the pastors of churches that affiliate with it to become ordained through the ICCM.

Embassy Philadelphia, not Embassy Sacramento, responded to USCIS's concerns by submitting several exhibits and an amended I-360 petition that substituted Embassy Philadelphia for Embassy Sacramento as the petitioning organization.  Along with this information, Embassy Philadelphia included a November 28, 2011 letter from Embassy Ukraine explaining that it no longer recognized Embassy Sacramento as a member of its network of churches.  According to the letter, Embassy Philadelphia, under Oleksandr's leadership, was the "full 'Successor of Interest'" of Embassy Sacramento's relationship with Embassy Ukraine.  USCIS denied the 2009 I-360 petition because Embassy Sacramento, as the petitioning organization, did not establish that Oleksandr had been and would be working for it as required pursuant to 8 U.S.C. § 1101(a)(27)(C) and 8 C.F.R. § 204.5(m)(3).

On April 10, 2012, "God's Embassy Church" attempted to appeal the denial to the USCIS Administrative Appeals Office ("AAO").  The form used to initiate the appeal was signed by Tatiana Aristova, an attorney who now represents the plaintiffs in this action.  The form did not reveal which God's Embassy entity was responsible for the appeal.  The notice of appearance accompanying the appeal was executed by Oleksandr on behalf of "The Embassy of God Church" with an address in Philadelphia and

not by any representative of Embassy Sacramento, the original petitioning organization.[4]

The AAO "reject[ed] the appeal or, in the alternative, summarily dismiss[ed] the appeal" on October 24, 2012. The AAO explained that Ms. Aristova did not have appropriate authority to file the appeal because she did not represent Embassy Sacramento, the petitioning organization. Under relevant regulations, an appeal not filed by the petitioner must be rejected. 8 C.F.R. § 103.3(a)(2)(v)(A)(1). In the alternative, even if the appeal had been properly filed, the AAO explained that it would have summarily dismissed it because the evidence demonstrated that Oleksandr would not be working for Embassy Sacramento, the petitioning organization, in the future. The AAO could not recognize the attempted substitution of Embassy Philadelphia for Embassy Sacramento as the petitioner because "[e]ligibility must be established at the time of filing."

### III.

We first discuss the Government's motion to dismiss the claim of Oleksandr under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction on the

---

[4] Embassy Philadelphia also filed a new Form I-360 for Oleksandr in May 2012. USCIS denied this new petition on May 14, 2013 because Oleksandr had not applied for employment authorization as required. Embassy Philadelphia appealed this denial, though it is unclear to whom it did so. According to the plaintiffs' brief, adjudication of the appeal is presently pending.

ground that he lacks constitutional standing.  Our jurisdiction is limited under Article III of the United States Constitution to "cases or controversies," and one element of this "bedrock requirement" is standing to sue.  Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).  Constitutional standing exists when a plaintiff demonstrates injury-in-fact, causation, and redressability.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

According to the Government, Oleksandr does not have constitutional standing because he has not suffered "an invasion of a legally protected interest" sufficient to show an injury-in-fact, and he has not demonstrated that a favorable decision would redress any injury he conceivably could have suffered.  See Ballentine v. United States, 406 F.3d 806, 814 (3d Cir. 2007).  The Government reasons that since Oleksandr, a mere beneficiary of the 2009 I-360 petition, does not have standing to appeal the denial of that petition as a regulatory matter, he also does not have standing as a constitutional matter.  See 8 C.F.R. § 103.3(a)(1)(iii)(B).  The Government cites a body of cases from other courts that concern visa matters other than I-360 petitions.  See, e.g., Echevarria v. Keisler, 505 F.3d 16, 18 (1st Cir. 2007); Ibraimi v. Chertoff, Civil Action No. 07-3644, 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008).

This authority notwithstanding, we will follow the well-reasoned decision of the district court in Shalom Pentecostal Church v. Napolitano.  Civil Action No. 11-4491, 2013 WL 162986, at *3 (D.N.J. Jan. 15, 2013).  In Shalom Pentecostal, the court decided that the non-petitioning beneficiary of an I-360 petition for a special immigrant religious worker classification has constitutional standing to contest USCIS action in federal court.  Shalom Pentecostal, 2013 WL 162986, at *3.

The court noted the key distinction between standing to pursue a regulatory appeal and standing as a constitutional matter:

> To be sure, a number of courts have held that the beneficiary of a visa petition, like [the alien], has no standing to challenge visa petition proceedings.... These [c]ourts, however, have grounded that finding in the regulatory requirement that only the petitioner, and not the petition's beneficiary, are considered an "affected party" with "legal standing" to file an appeal of an unfavorable visa petition decision.... But whether a litigant has constitutional standing to sue in federal court "is not dependent on any agency regulation."

Id. (citations omitted).  The court in Shalom Pentecostal concluded that the alien had indeed suffered an injury-in-fact under Lujan in the form of denial of an I-360 petition filed for his benefit.  Id. The alien further demonstrated redressability, since a favorable decision would result in the granting of the I-360 petition sought. Id. at *4.

The present case is substantially identical to <u>Shalom Pentecostal</u> in this respect.  Oleksandr is the beneficiary of the 2009 I-360 petition, not the affected party.  As such, even assuming that he does not have standing to appeal the denial of that petition to the AAO as a regulatory matter, <u>see</u> 8 C.F.R. § 103.3(a)(1)(iii)(B), Oleksandr has suffered a concrete, particularized injury-in-fact because the Form I-360 filed for his benefit has been denied, foreclosing to him an opportunity to lawfully remain and work in the United States.  <u>Shalom Pentecostal</u>, 2013 WL 162986, at *3.  A favorable decision in the instant lawsuit would serve to redress that injury by setting aside the denial of the I-360 petition as arbitrary and capricious.  <u>Id.</u> at *4; 5 U.S.C. § 706(2)(A).  Therefore, Oleksandr has demonstrated the requirements for constitutional standing under <u>Lujan</u>, and we conclude that we have subject-matter jurisdiction over his claims.  <u>Id.</u>; <u>Lujan</u>, 504 U.S. at 560-61.  The motion of the Government to dismiss Oleksandr for lack of subject-matter jurisdiction will be denied.

## IV.

We turn to USCIS's denial of the 2009 I-360 petition filed by Embassy Sacramento for Oleksandr's benefit.  When reviewing agency action under the APA, we must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).  An agency action is arbitrary and capricious if the agency

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "The scope of review under this standard 'is narrow and a court is not to substitute its judgment for that of the agency.'"  Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne, 497 F.3d 337, 347 (3d Cir. 2007) (quoting Motor Vehicle Mfrs., 463 U.S. at 43).

In the present action neither Oleksandr, nor his attorney, nor Embassy Philadelphia has met the requirements necessary as an administrative matter to appeal the denial of the 2009 I-360 petition to the AAO.  To appeal the denial of an I-360 petition, "[t]he affected party must submit an appeal on Form I-290B."  8 C.F.R. § 103.3(a)(2)(i).  The "affected party" is "the person or entity with legal standing in a proceeding."  8 C.F.R. § 103.3(a)(1)(iii)(B).  "It does not include the beneficiary of a visa petition," even though an alien could file an I-360 petition on his or her own behalf at the outset.  Id. § 103.3(a)(1)(iii)(B); § 204.5(m)(6).  An appeal filed by a person other than the affected

party must be rejected as improperly filed.  8 C.F.R. § 103.3(a)(2)(v)(A)(1).

The affected party in this matter was Embassy Sacramento, the original petitioner.  It did not file the AAO appeal.  Instead, the appeal was filed through the plaintiffs' present attorney in the name of "God's Embassy Church" without any further identification.  The notice of appearance accompanying the appeal, executed by Oleksandr himself, shows that a "God's Embassy Church" with a Philadelphia address authorized Ms. Aristova to represent it.  This stands in contrast to the original I-360 petition executed by Embassy Sacramento's President and listing "God's Embassy Church" with an address in Sacramento, California as the petitioning organization.  Because Embassy Sacramento did not file the appeal, the AAO properly rejected it under duly promulgated regulations.

Nowhere do the plaintiffs challenge the validity of the regulations upon which the AAO relied, and we have been directed to no statute governing who may file an administrative appeal of a denial of a religious worker petition.  We therefore have no basis upon which to question the AAO's decision to reject the appeal as improperly filed.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  Summary judgment will be granted in favor of the Government.

Even if the appeal had been properly filed, USCIS's decision to deny the 2009 I-360 petition would still survive our review. The denial was in fact a series of decisions, all ultimately grounded in the failure to meet the requirement that the beneficiary is "coming to work for a bona fide non-profit religious organization in the United States, or a bona fide organization which is affiliated with the religious denomination in the United States." 8 C.F.R. § 204.5(m)(3). It is the plaintiffs' position that these decisions are "ultra vires" because Oleksandr had a continuous relationship with Embassy Ukraine, and no specific statutory or regulatory provision prohibits substitution of a petitioner.

Unfortunately for the plaintiffs, the standard of review in this case forecloses their argument. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The Government based its decisions on factors Congress intended it to consider, specifically the existence of a prospective employment relationship, or lack thereof, between the beneficiary and a non-profit religious denomination or associated non-profit organization. 8 U.S.C. § 1101(a)(27)(C); 8 C.F.R. § 204.5(m)(3). The evidence demonstrates a schism between Embassy Ukraine and Embassy Sacramento, a separation between Embassy Sacramento and Oleksandr, and no relationship between Embassy Sacramento and Embassy Philadelphia. The evidence also shows Oleksandr's

problematic attempt to establish Embassy Philadelphia's non-profit status through the ICCM.  The plaintiffs have not established any relationship between the ICCM and Embassy Ukraine or the ICCM and Embassy Sacramento.  The Government could not initially find Embassy Sacramento at its given address when it went looking for it.  In addition, the Government found no existing church at the address for Embassy Philadelphia.  Oleksandr was found at his home in this city.  USCIS therefore made a plausible determination that Embassy Ukraine's substitution of Embassy Philadelphia as its "daughter church" was insufficient to overcome the serious gaps in the record regarding Oleksandr's employment in the United States by a qualified organization.  See Motor Vehicle Mfrs., 463 U.S. at 43.

Furthermore, the plaintiffs have not given any specific explanation why USCIS's decision "runs counter to the evidence before the agency." Id.  They rely instead on an argument that the attempted replacement of Embassy Sacramento as the petitioner was not material and should have been permitted in the absence of a specific statutory prohibition.

An agency's interpretation of its own regulations is entitled to deference when it is not plainly erroneous or inconsistent with the regulations. Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 880 (2011) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)).  In this case, USCIS's regulations contain detailed evidentiary requirements to establish a prospective

employment relationship between the I-360 beneficiary and the employing organization.  8 C.F.R. § 204.5(m)(6)-(12).  Given the importance of the employment relationship to religious worker eligibility, USCIS interpreted these regulations not to permit substitution of an employer.  This interpretation is neither plainly erroneous nor inconsistent with the regulations and is therefore entitled to deference.  Chase Bank, 131 S. Ct. at 880.  USCIS's denial of the I-360 petition on this ground was therefore not arbitrary or capricious.  Of course, our deferral to USCIS's interpretation that substitution is not permissible under its regulations also gives added support to our conclusion that the AAO's decision to reject the plaintiffs' attempted appeal as improperly filed was not arbitrary or capricious.  8 C.F.R. § 103.3(a)(1)(iii)(B).

By the same token, the plaintiffs' contention that Oleksandr was eligible for religious worker status at the time the original I-360 petition was filed in 2009 does not mean that the attempted substitution of petitioners was not a valid reason to deny the petition.  We note that the AAO stated in its opinion that "[e]ligibility must be established at the time of filing."  The AAO also cited 8 C.F.R. § 103.2(b)(1), which provides more fully that a "petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and

must continue to be eligible through adjudication." 8 C.F.R. § 103.2(b)(1) (emphasis added).

USCIS obtained information during the course of adjudication that Embassy Sacramento would not be employing Oleksandr in the future and that Embassy Sacramento was not closely affiliated with a religious denomination as required under 8 C.F.R. § 204.5(m)(3). The agency had further reason to question Embassy Philadelphia's eligibility as a bona fide non-profit religious organization under that regulation because Embassy Philadelphia had apparently obtained tax-exempt status by becoming a subordinate of the ICCM, a third-party entity that was related to neither Embassy Sacramento, the organization that had originally sought religious worker status for Oleksandr, nor Embassy Ukraine, the entity at the head of Oleksandr's religious denomination. Thus, even if the AAO appeal had been properly filed, the agency's decision summarily to dismiss it on the merits comported with duly-promulgated regulations, the validity of which the plaintiffs do not challenge. See C.F.R. § 103.2(b)(1). USCIS's decision was therefore not arbitrary or capricious.

In sum, as the Government has aptly stated, the plaintiffs "have simply failed to show that USCIS was required to grant the Form I-360 filed by a Sacramento church (that is not a party to this lawsuit) after an investigation showed that it was no

longer affiliated with the church where the beneficiary was actually employed."

Accordingly, we will grant the cross-motion of the Government for summary judgment and we will deny that of the plaintiffs.